UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

**SUZANNE M BROWN,**

**Plaintiff**

Case No. 2:26−cv−10426−LVP−DRG

V.

**MACOMB COMMUNITY COLLEGE,**

**JEFFREY STEELE**, in his individual capacity

and in his official capacity as General Counsel

of Macomb Community College,

**JOHN MELDRUM**, in his individual capacity

and in his official capacity as Director of

Records and Registration,

**WILLIAM LEAVENS**, in his individual capacity

and in his official capacity as Chief of Macomb

Community College Police Department,

**ERIC MYERS**, in his individual capacity

and in his official capacity as Sergeant,

Macomb Community College

Police Department, and

1

**AIMEE ADAMSKI**, in her individual capacity

and in her official capacity as Registrar/

Director of Enrollment Services,

**Defendants**

## FIRST AMENDED COMPLAINT

### (Jury Trial Demanded)

Plaintiff Suzanne M. Brown, proceeding pro se, for her First Amended Complaint against Defendants, states as follows:

I. **PARTIES**

1. Plaintiff SUZANNE M. BROWN ("Plaintiff" or "Brown") is a natural person, a United States citizen, a graduate of the United States Naval Academy, a former Marine Corps Captain, and a resident of Coös County, New Hampshire. At all relevant times she sought to enroll as a veteran online student at Macomb Community College for Winter 2026 semester Siemens NX and other supporting engineering coursework.

2. Defendant MACOMB COMMUNITY COLLEGE ("MCC" or "the College") is a public community college and political subdivision of the State of Michigan, with its principal campus at 14500 E. 12 Mile Road, Warren, Macomb County, Michigan 48088. MCC is a recipient of federal funds under Title IV of the Higher Education Act and is subject to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.

2

3. Defendant JEFFREY STEELE ("Steele") is, and at all relevant times was, General Counsel of MCC. He is sued in his individual capacity for damages and in his official capacity for declaratory and injunctive relief.

4. Defendant JOHN MELDRUM ("Meldrum") is, and at all relevant times was, the Director of Records and Registration at MCC. He is sued in his individual capacity and official capacity.

5. Defendant WILLIAM LEAVENS ("Leavens") is, and at all relevant times was, Chief of the MCC Police Department. He is sued in his individual capacity and official capacity.

6. Defendant ERIC MYERS ("Myers") is, and at all relevant times was, a Sergeant in the MCC Police Department. He is sued in his individual capacity and official capacity.

7. Defendant AIMEE ADAMSKI ("Adamski") is, and at all relevant times was, Registrar and Director of Enrollment Services at MCC. She is sued in her individual capacity and official capacity.

At all relevant times, each individual Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983 and within the scope of his or her employment with MCC.

**II. JURISDICTION AND VENUE**

This action arises under the United States Constitution and laws, including 42 U.S.C. § 1983, 42 U.S.C. § 1988, and FERPA, 20 U.S.C. § 1232g, as construed and enforced through § 1983.

This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)–(4), and supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367(a).

The amount in controversy exceeds $75,000 exclusive of interest and costs.

Venue is proper in this District under 28 U.S.C. § 1391(b)(1)–(2) because MCC is located in this District, the individual Defendants reside or are employed here, and a substantial part of the events or omissions giving rise to the claims occurred in Macomb County, Michigan.

**III. FACTUAL ALLEGATIONS**

A. Plaintiff's Enrollment and Course Access

1. In late 2025, Plaintiff sought to enroll at MCC for the Winter 2026 semester to obtain Siemens NX engineering software and related manufacturing and industrial design training to enable design and construction of an in-progress marine development project.

2. Plaintiff applied for admission, submitted the requested documents, and was admitted as a student. MCC assigned her a student identification number (#1396878) and treated her as an enrolled student for Winter 2026.

3. MCC registered Plaintiff in at least two Winter 2026 courses and provided her with access credentials to MCC online platforms, including Canvas and the Splashtop remote-access environment used for the NX course.

4. Using those credentials, Plaintiff accessed MCC's systems and course materials. As of January 2026, Plaintiff was able to log into Canvas and the remote-access environment, and she did so.

5. MCC also processed Plaintiff's federal financial-aid documentation. MCC and its Financial Aid department employees and automated system sent multiple financial-aid communications to Plaintiff in December 2025 and January 2026, including messages about identity-verification documentation, financial-aid awards, and a Master Promissory Note.

B. MCC's "Identity Verification" Demands and ID Hold

1. On or about January 6, 2026, Plaintiff received an "Action Required Regarding Your 2025–2026 Financial Aid" message advising that certain identity-verification items were needed.

2. On or about January 12, 2026, Plaintiff provided MCC with identity documentation, including a notarized hard copy copy of her New Hampshire driver's license and other requested documents, which she mailed with tracking confirmation via the United States Postal Service.

3. On or about January 23, 2026, MCC, through its financial-aid office, sent Plaintiff a message titled "Important: Identity Verification Needed," stating that Plaintiff's financial aid was on hold pending receipt of additional identity documents.

4. On or about January 26, 2026, Plaintiff provided MCC, specifically Defendant MELDRUM, with a color copy of her driver's license and a recent phone bill via email, both bearing her name and current address, in response to MCC's requests.

5. Despite receiving multiple forms of identity documentation, MCC placed or maintained an "ID hold" on Plaintiff's account and continued to represent that her enrollment and aid could not proceed because of "identity" issues.

6. MCC did not identify any specific mismatch in Plaintiff's name, Social Security number, date of birth, or address, and did not claim that any of the documents were forgeries. The hold persisted without a clearly articulated, fact-based reason after Plaintiff supplied the requested documents and requested information about the verification process and its excessive duration.

C. Course Status, "No Show" Coding, and Preservation Notice

1. In late January 2026, Plaintiff received communications regarding scheduling and billing for Winter 2026. MCC's January 29, 2026 email titled "Scheduling and Billing Corrections" confirmed adjustments to her schedule and billing.

2. On February 2, 2026, Plaintiff sent an email titled "URGENT: Please Release ID Hold Brown 1396878," explaining that she had already submitted the requested identity documentation and asking MCC to clear the hold so that she could attend class and access financial aid.

3. At some point thereafter, MCC designated Plaintiff as a "No Show" for at least one Winter 2026 course. Plaintiff disputes this designation as inconsistent with her access and activity on MCC's systems.

4. On February 3, 2026, after notification of removal from the entire MCC online system, Plaintiff sent a "NOTICE OF PRESERVATION OF EVIDENCE – Suzanne Brown Student ID: 1396878" to MCC, demanding that MCC preserve all relevant records, including:

   a. Canvas and Splashtop access logs for Plaintiff's user credentials;

   b. All emails, notes, and internal messages regarding her enrollment, "ID hold," and financial aid; and

   c. Any records of her course status, including "No Show" coding.

5. MCC has not provided Plaintiff with access to these underlying logs or internal records and has continued to maintain the "No Show" designation in its systems.

D. Filing of This Lawsuit and Plaintiff's FERPA Request

1. On February 5, 2026, Plaintiff filed her original Complaint in this action under 42 U.S.C. § 1983 and state law, challenging MCC's handling of her enrollment, due process, and related matters.

2. On February 3, 2026—two days before filing her Complaint—Plaintiff submitted a written request to MCC for access to her education records pursuant to FERPA, 20 U.S.C. § 1232g(a)(1)(A), and its implementing regulations, 34 C.F.R. Part 99.

3. In that FERPA request and a supplemental request dated February 10, 2026, Plaintiff requested, among other things:

   a. Admissions and registration records;

   b. Financial-aid records and communications;

   c. Identity-verification records, including documentation submitted by Plaintiff and internal notes about MCC's evaluation of those documents;

7

   d. Course-access logs for Canvas, Splashtop, and any related systems; and

   e. Any records relating to her course attendance status, including "No Show" entries.

   f. Any records of her application for federal Work Study employment.

  4. At all relevant times, MCC maintained records of Plaintiff's admissions, registration, course status, financial aid, work study, and identity verification within the meaning of FERPA's definition of "education records," 34 C.F.R. § 99.3.

E. February 10, 2026 FERPA Denial by Adamski (Copied to Steele, Meldrum, and Myers)

  1. On February 10, 2026, Defendant AIMEE ADAMSKI, in her role as Registrar/Director of Enrollment Services, sent Plaintiff an email responding to Plaintiff's FERPA request (the "FERPA Denial").

  2. In the FERPA Denial, Adamski took the position that Plaintiff was not entitled to inspect and review the requested records on the ground that Plaintiff was allegedly not a "student" for FERPA purposes, and referenced the concept of "good faith" enrollment.

  3. FERPA and its implementing regulations define "student" as "any individual who is or has been in attendance at an educational agency or institution and regarding whom the agency or institution maintains education records." 34 C.F.R. § 99.3. Neither the statute nor the regulations contain a "good faith enrollment" requirement.

  4. At the time of the FERPA Denial, MCC maintained education records concerning Plaintiff, including:

8

   a. Admissions and registration records;

   b. Financial-aid records; including federal Work Study job application

   c. Identity-verification communications and documentation;

   d. Course-access and system-usage records; and

   e. Status entries such as "No Show."

5. The FERPA Denial effectively refused to provide Plaintiff with access to any of these education records despite her written requests.

6. Defendant STEELE, as General Counsel, as well as Defendants MELDRUM and MYERS, were copied on the February 10, 2026 FERPA Denial email. Plaintiff is informed and believes that all copied defendants were aware of, and did not correct, Adamski's reliance on a "good faith" concept not found in FERPA's text or regulations.

7. In addition to Defendant STEELE, as General Counsel, and Defendants MELDRUM and LEAVENS, as Director of Records and Registration and Chief of Police, respectively, had managerial or supervisory responsibility over relevant institutional records and were aware, or reasonably should have been aware, of Plaintiff's FERPA request and the decision to deny access.

8. The FERPA Denial was sent five days after Plaintiff filed this federal civil-rights lawsuit and one week after Plaintiff's February 3, 2026 preservation notice. The denial has prevented Plaintiff from reviewing the records that would clarify the basis for MCC's actions and allow her to challenge false or misleading entries.

F. Lack of Notice and Opportunity to Be Heard

1. MCC did not provide Plaintiff with written notice of specific charges, a hearing, or any formal procedure before:

    a. Maintaining an "ID hold" after she supplied multiple identity documents;

    b. Coding her as a "No Show" for Winter 2026;

    c. Adjusting or characterizing her financial-aid and billing status based on those internal designations; and

    d. Denying her access to education records under FERPA.

2. MCC has also not provided Plaintiff with any meaningful post-deprivation process by which she could contest the "No Show" designation, the ID hold, or the denial of records. Rather, she has been directed to contact MCC law enforcement only.

3. As a result, Plaintiff has been denied a fair opportunity to understand MCC's actions, to contest those actions internally, and to obtain the records necessary to clear her name and protect her educational and financial interests.

**IV. CLAIMS FOR RELIEF**

COUNT I

FOURTEENTH AMENDMENT DUE PROCESS – PROPERTY AND LIBERTY INTERESTS

(42 U.S.C. § 1983 – Against All Defendants)

1. Plaintiff incorporates by reference paragraphs 1–43 as if fully set forth herein.

2. Plaintiff had constitutionally protected property interests in her admitted status, course enrollment, and related financial-aid benefits once MCC accepted her as a student, registered her for Winter 2026 courses, and processed her financial-aid documentation.

3. Plaintiff also has liberty interests in her good name, in pursuing her chosen education and career path, and in being free from arbitrary government action that stigmatizes her through inaccurate internal records such as a "No Show" designation.

4. Defendants, acting under color of state law, deprived Plaintiff of these interests by:

   a. Maintaining an "ID hold" despite receiving ordinary identity documents;

   b. Classifying her as a "No Show" without accurate reflection of her course-access history;

   c. Adjusting financial-aid and billing status based on internal designations she had no opportunity to contest; and

   d. Denying access to education records necessary to challenge MCC's actions.

5. Defendants provided no meaningful pre-deprivation process and no adequate post-deprivation remedy. Plaintiff was not notified of a specific charge or rule violation and was not offered any kind of hearing before or after the adverse actions.

6. Defendants' actions were arbitrary and capricious in light of Plaintiff's prompt and repeated efforts to clarify and resolve the "ID hold," to comply with documentation requests, and to obtain explanation or review.

7. As a direct and proximate result of these due-process violations, Plaintiff has suffered loss of educational opportunity, emotional distress, financial loss, and reputational harm.

8. Plaintiff is entitled to compensatory damages against all Defendants, punitive damages against the individual Defendants, and declaratory and injunctive relief requiring MCC to provide appropriate process and correct inaccurate records.

COUNT II

FOURTEENTH AMENDMENT EQUAL PROTECTION – ARBITRARY DIFFERENTIAL TREATMENT

(42 U.S.C. § 1983 – Against All Defendants)

1. Plaintiff incorporates by reference paragraphs 1–51 as if fully set forth herein.
2. Plaintiff is similarly situated to other MCC students who provide standard identity documentation, who are admitted and registered for courses, and whose financial aid is processed in the ordinary course.
3. MCC treated Plaintiff differently from similarly situated students by:
    a. Continuing to enforce an "ID hold" after she supplied typical identity documents (notarized copy of driver's license and Macomb Identity/Statement of Purpose form, phone bill) without identifying a concrete discrepancy;
    b. Coding her as a "No Show" despite her access to course platforms; and
    c. Denying her access to education records on a ground not applied to other students.
4. There is no legitimate educational or administrative basis for applying these heightened and inconsistent barriers to Plaintiff as compared with other students who present similar documentation.
5. The differential treatment was irrational and arbitrary and thus violated the Equal Protection Clause of the Fourteenth Amendment under a "class-of-one" theory.

12

6. As a direct and proximate result, Plaintiff has suffered the damages described above, including loss of educational opportunity, financial harm, and emotional distress.

7. Plaintiff is entitled to compensatory damages, punitive damages against the individual Defendants, and declaratory and injunctive relief barring MCC from treating her differently on an arbitrary basis.

COUNT III

RETALIATION FOR EXERCISE OF RIGHT OF ACCESS TO COURTS

(42 U.S.C. § 1983 – Against All Defendants)

1. Plaintiff incorporates by reference paragraphs 1–58 as if fully set forth herein.

2. Filing a civil-rights lawsuit in federal court is protected activity under the First and Fourteenth Amendments, including the right of access to the courts and to petition the government for redress.

3. Plaintiff filed this lawsuit on February 5, 2026. By February 10, 2026, MCC and the individual Defendants knew or reasonably should have known of the lawsuit.

4. On February 10, 2026—five days after the lawsuit was filed and one week after Plaintiff sent a preservation-of-evidence notice—Defendant Adamski issued the FERPA Denial, invoking an extra-statutory "good faith" concept and categorically refusing Plaintiff access to her education records.

5. The close timing between Plaintiff's lawsuit and the FERPA Denial, combined with the absence of any FERPA-based requirement matching the justification given, supports an inference that the denial was substantially motivated by retaliation for Plaintiff's protected activity.

    6. Denying access to education records hampers Plaintiff's ability to gather evidence, understand the basis for MCC's actions, and litigate her claims. A person of ordinary firmness would be deterred by such conduct.

    7. Defendants' retaliatory acts have impaired Plaintiff's right of access to the courts and to petition the government for redress.

    8. Plaintiff is entitled to compensatory damages and punitive damages against the individual Defendants, as well as declaratory and injunctive relief prohibiting further retaliation and requiring compliance with FERPA and constitutional standards.

COUNT IV

VIOLATION OF FERPA RIGHT OF ACCESS TO EDUCATION RECORDS

(Enforceable Under 42 U.S.C. § 1983 – Against MCC, Adamski, Steele, Meldrum, and Leavens)

    1. Plaintiff incorporates by reference paragraphs 1–66 as if fully set forth herein.

    2. FERPA, 20 U.S.C. § 1232g(a)(1)(A), and 34 C.F.R. §§ 99.3, 99.10–99.12, confer on eligible students a right to inspect and review their education records maintained by an educational institution receiving federal funds.

    3. MCC is a recipient of federal funds and is an "educational agency or institution" subject to FERPA.

    4. At all relevant times, MCC maintained education records about Plaintiff, including admissions, registration, course status, financial-aid records, identity-verification documentation, and course-access/system-usage records.

    5. Plaintiff submitted written FERPA requests on or about February 3 and February 10, 2026, requesting access to her education records.

6. On February 10, 2026, Adamski, acting in her official role as Registrar/Director of Enrollment Services, denied Plaintiff's request on the ground that Plaintiff allegedly was not a "student" because of "good faith" considerations. That justification does not appear in the FERPA statute or regulations.

7. Defendant Steele, as General Counsel, was copied on the FERPA Denial and did not correct the reliance on a "good faith" concept not contained in FERPA's definition of "student."

8. Defendants Meldrum and Leavens, in their managerial roles, had responsibility for ensuring lawful handling of student records and knew or should have known of the denial and the underlying requests and governing federal and state statutes.

9. By refusing to allow Plaintiff to inspect or review her education records, Defendants have deprived her of rights secured by FERPA and its regulations, enforceable through 42 U.S.C. § 1983.

10. The denial is ongoing; Plaintiff has still not been permitted to inspect her education records, including course-access logs and internal status entries.

11. As a direct and proximate result, Plaintiff has been deprived of access to records she is entitled to review, impeding her ability to clear her name, understand MCC's actions, and protect her educational and financial interests.

12. Plaintiff seeks declaratory and injunctive relief ordering MCC and the individual Defendants to:

    a. Provide Plaintiff full access to all of her education records as defined by FERPA and 34 C.F.R. § 99.3;

    b. Remove or correct any inaccurate or misleading entries, including the "No

   Show" designation, upon appropriate documentation; and

   c. Implement policies and training ensuring that FERPA rights are respected and that extra-statutory barriers such as "good faith" are not imposed.

13. Plaintiff also seeks compensatory and punitive damages from the individual Defendants for deliberate deprivation of her FERPA rights.

COUNT V

STATE-LAW CLAIMS (BREACH OF CONTRACT / PROMISSORY ESTOPPEL / MISREPRESENTATION)

(Against MCC Under Supplemental Jurisdiction)

1. Plaintiff incorporates by reference paragraphs 1–79 as if fully set forth herein.

2. MCC's admissions communications, financial-aid communications, and course-registration confirmations constituted promises that, if Plaintiff provided the requested documentation and complied with MCC requirements, MCC would:

  a. Maintain her admitted and registered status for Winter 2026;

  b. Provide access to course platforms and instruction; and

  c. Process her financial aid consistent with established standards.

3. Plaintiff relied on these representations by committing her time, resources, and planning around her Winter 2026 enrollment and NX training and other engineering and design training at MCC.

4. MCC breached these obligations by:

  a. Maintaining an "ID hold" despite receiving ordinary identity documents and without identifying a concrete discrepancy;

  b. Classifying Plaintiff as a "No Show" inconsistent with her access history;

16

  c. Adjusting billing and financial-aid status based on disputed internal designations; and

  d. Refusing to provide records that would allow Plaintiff to understand and contest these actions.

5. To the extent MCC's communications and confirmations did not constitute a contract, they created clear and definite promises on which Plaintiff reasonably and foreseeably relied to her detriment, giving rise to promissory estoppel.

6. MCC's actions and omissions also amounted to misrepresentations about the status of Plaintiff's enrollment, the reasons for the ID hold, and the accuracy of her "No Show" status, on which Plaintiff reasonably relied.

7. As a direct and proximate result, Plaintiff has suffered financial loss, lost educational opportunity, and consequential damages.

## V. DAMAGES

1. As a direct and proximate result of Defendants' conduct, including the FERPA denial and retaliation alleged in this First Amended Complaint, Plaintiff has suffered and continues to suffer:

a. Economic losses, including tuition and fees, administrative costs, and significant professional opportunity costs and loss of income resulting from the deliberate delay of Plaintiff's specialized Siemens NX engineering training;

b. Non-economic losses, including defamation-type harm (being portrayed as a "No Show" and as someone whose identity is suspect), constitutional injuries, and profound emotional distress and humiliation caused by being barred from academic staff and referred to law-enforcement personnel without cause; and

      c. Additional harm from being denied access to the very education records that would allow her to understand and contest MCC's actions.

2. Plaintiff presently estimates her compensatory damages—including economic loss and non-economic/general damages—at no less than Six Hundred Eighty Thousand Dollars ($680,000), and seeks punitive (exemplary) damages against the individual Defendants in an amount of no less than Five Hundred Thousand Dollars ($500,000), for a combined total monetary award of approximately One Million One Hundred Eighty Thousand Dollars ($1,180,000), subject to proof at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants, and award the following relief:

A. A declaration that Defendants' acts and omissions described above violated Plaintiff's rights under the Fourteenth Amendment, the First Amendment, FERPA, and Michigan law;

B. Preliminary and permanent injunctive relief ordering Defendants to:

1. Provide Plaintiff full access to all of her education records pursuant to FERPA;

2. Remove or correct inaccurate or misleading entries, including the "No Show" designation, upon appropriate documentation;

3. Clarify and, where appropriate, correct Plaintiff's financial-aid and billing status for Winter 2026; and

4. Adopt and implement FERPA-compliant policies and training, including prohibiting reliance on extra-statutory "good faith" concepts and retaliatory denials of record access;

C. Compensatory damages (including economic and general/non-economic damages) in an amount to be determined at trial, but not less than Six Hundred Eighty Thousand Dollars ($680,000);

D. Punitive (exemplary) damages against the individual Defendants in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000);

E. Plaintiff's costs and, to the extent permitted by law, attorney's fees under 42 U.S.C. § 1988 (with Plaintiff reserving the right to seek fees if she later retains counsel);

F. Pre-judgment and post-judgment interest as permitted by law; and

G. Such other and further relief as the Court deems just and proper.

**VII. JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 13, 2026

/s/ Suzanne M. Brown

>
>Respectfully Submitted,
>
>*/s/ Suzanne Brown*
>114 Lake Umbagog
>P.O. Box 253
>Errol, NH 03579
>(603) 828-4860
>blackeaglecomposites@gmail.com